**James Lee MITCHELL, Appellant,**

v.

**Betty MITCHELL, Appellee.**

**No. 23609.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1970.

Decided June 21, 1971.

---

Mr. Woodley B. Osborne, Washington, D. C., with whom Mrs. Patricia M. Wald, Washington, D. C., was on the brief, for appellant.

Mr. Ted D. Kuemmerling, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Hubert B. Pair, Acting Corporation Counsel at the time the brief was filed, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellee. Mr. Charles T. Duncan, Corporation Counsel at the time the record was filed, also entered an appearance for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and MacKINNON and ROBB, Circuit Judges.

ROBB, Circuit Judge:

This is an appeal from a judgment of the District of Columbia Court of Appeals, affirming an order entered in 1965 in the Domestic Relations Branch of the District of Columbia Court of General Sessions. We affirm the judgment.

The parties are husband and wife. In 1965 the wife, appellee here, filed a peti-tion for support in the Juvenile and Domestic Relations Court of Richmond, Virginia. In her petition she alleged that she and her husband, appellant here, were married on July 21, 1956; of the marriage three children were born; and she was pregnant with their fourth child. She further alleged that in the spring of 1965, while she and her husband were living in Richmond, the husband left to find work in Washington, D. C., and since that time had made only occasional contributions for the support of his wife and family. She averred that because of her pregnancy she was unable to work, and she needed $40.00 a week from her husband in order to support herself and the children. The petition was under oath.

Pursuant to the provisions of the Uniform Reciprocal Enforcement of Support Act (D.C. Code § 30–301, *et seq.* (1967)) the wife's petition was certified to the District of Columbia Court of General Sessions, Domestic Relations Branch. On August 31, 1965 the appellant husband, in that court, consented to an order directing him to pay for the support of his wife and three minor children the sum of $25.00 a week. On December 1, 1965, after the birth of the fourth child, he consented to an order that he pay $30.00 a week for the support of the family. The appellant was not represented by counsel in these proceedings.

The appellant did not comply with the orders of the Court of General Sessions and by February 1, 1966 he was $361.00 in arrears. Accordingly, he was adjudged in contempt and sentenced to jail for a period of fifteen days, or until he purged himself of his contempt. Execution of the order was stayed upon condition that appellant make each $30.00 weekly payment as it came due and in addition pay $3.00 weekly to be applied to the arrears of $361.00 until paid in full. The appellant again failed to comply and by August 4, 1967 his arrears totaled $1,459.00. An order to show cause why he should not be adjudged in contempt was thereupon issued and served upon him. Through counsel, he

filed an opposition to the order to show cause, together with a motion to reduce his support payments. His motion prayed that his payments for the support of his wife and four children in Richmond be reduced to $18.00 a week.

At the hearing on the order to show cause the appellant testified that he was and had been for two years employed in Washington by the Que Street Junk Company, his "take home pay" being $68.00 a week. He testified further that he was the father of a two-year old daughter born out of wedlock in the District of Columbia. He said this daughter was "living with her mother in the District of Columbia". According to the appellant the mother "worked parttime as a checker in a supermarket and supported her daughter with these earnings" and he "generally drove the mother * * * to and from work". He had not disclosed the existence of the natural daughter when he consented to the previous support orders.

The appellant testified that his weekly expenses were approximately these: $15.00 for rent, $10.00 for food, $6.00 for gasoline and oil and general car maintenance, $5.00 for cigarettes and laundry, $5.00 weekly payments on a portable T.V. set, $10.00 weekly payments on a 1960 Oldsmobile automobile purchased in June 1967 for $300.00.[1] Finally, he testified that he paid $8.00 a week for a babysitter for his natural daughter.

The trial court denied the motion to reduce the appellant's payments and found that he had failed and refused to obey the support order, although able to pay; that as of November 17, 1967 he was $1,889.00 in arrears; and that he was therefore in contempt of court. The court ordered him committed for twenty days, or until he purged himself of contempt, but suspended this order upon condition that he pay to the clerk of court $60.00 on or before December 1,

1967, and in addition make regular payments of $30.00 as they became due together with $2.50 a week to be applied to the arrears. The court stated that it was "bound by appellate decisions not to consider the needs of the defendant's natural child or 'second family,' in passing on the motion to reduce, or in considering defendant's ability to comply with the support orders".

The District of Columbia Court of Appeals affirmed the judgment of the trial court. Mitchell v. Mitchell, 257 A.2d 496 (D.C.App.1969). The Court of Appeals cited its decisions in Miner v. Miner, 192 A.2d 811 (D.C.App.1963), and Jefferson v. Jefferson, 192 A.2d 813 (D.C.App.1963), to the effect that " * * * as between the claims of legitimate and illegitimate children the children who are the result of a marital relationship are entitled to support from their father before and in preference to those born through an illicit association". The court concluded that the trial court did not abuse its discretion in denying the appellant's motion to reduce support payments and in holding him in contempt. We granted the appellant's petition for allowance of an appeal.

The burden of the appellant's argument in this court is that in refusing to consider the needs of the appellant's natural child the District of Columbia courts denied her the equal protection of the laws. In support of this argument the appellant relies chiefly on Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, reh. denied, 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed.2d 185 (1968), and Glona v. American Guarantee & Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441, reh. denied, 393 U.S. 898, 89 S.Ct. 66, 21 L.Ed.2d 185 (1968). In the *Levy* case the Court held that Louisiana could not consistently with the equal protection clause bar an illegitimate child from recovering for the wrongful death of its mother when

1. In his affidavit in support of his motion for leave to proceed in forma pauperis in this court, the appellant states:

"In May 1968 I purchased a 1965 Ford for $1,500.00, the price to be paid in installments. I am now several months behind in the payments and have practically no equity in the car. I need a car to get to my various jobs."

such recoveries by legitimate children were authorized. In the *Glona* case the Court held invalid a statute that prohibited a mother from recovering for the wrongful death of her illegitimate son. From these decisions, says the appellant, it follows that an illegitimate child's "right to support [must] be coextensive with that of his legitimate counterpart", and "[t]here can be no justification for conditioning a child's right to support on the circumstance that he was born in wedlock."

Labine v. Vincent, 401 U.S. 532, 91 S. Ct. 1017, 28 L.Ed.2d 288, decided by the Supreme Court March 29, 1971, refutes the appellant's argument. In the *Labine* case the guardian of an illegitimate minor child attacked the constitutionality of Louisiana statutes that barred an illegitimate child from sharing equally with legitimates in the estate of their father, who had publicly acknowledged the child, but who died without a will. As does the appellant here, the guardian relied upon the *Levy* and *Glona* cases, but the Court found that reliance misplaced and upheld the challenged statutes. The Court said (pp. 536–538, 91 S.Ct. p. 1019); "*Levy* did not say and cannot fairly be read to say that a State can never treat an illegitimate child differently from legitimate offspring. * * * Of course, it may be said that the rules adopted by the Louisiana Legislature 'discriminate' against illegitimates. * * * Other rules determining property rights based on family status also 'discriminate' in favor of wives and against 'concubines.' * * * There is no biological difference between a wife and a concubine nor does the Constitution require that there be such a difference before the State may assert its power to protect the wife and her children against the claims of a concubine and her children. The social difference between a wife and a concubine is analogous to the difference between a legitimate and an illegitimate child. One set of relationships is socially sanctioned, legally recognized and gives rise to various rights and duties. The other set of relationships is illicit and beyond the recognition of the law." (Footnotes omitted) The Court distinguished the *Glona* decision. In that case, said the Court, the majority found no rational basis for prohibiting a mother from recovering for the wrongful death of her son, whereas there "clearly" was a rational basis for the Louisiana intestate succession statute "in view of Louisiana's interest in promoting family life and of directing the disposition of property left within the State". (p. 536, n. 6, 91 S.Ct. p. 1019)

We conclude that there is a rational basis for the rule adopted by the District of Columbia court that children of a lawful marriage are entitled to support from their father in preference to those born as a result of an illicit association. The rule is reasonably founded on the interest of a state in preserving the integrity of marriage and in promoting the family life sanctioned by law and the mores. We see no reason to interfere with this judgment of the local court that the needs of a man's wife and legitimate family are superior to those of the offspring of his illicit intercourse. Although the court's policy may create problems for the man, his paramour and her child, we cannot say that because of this it is irrational;[2] nor can we reject it because some other distribution of the appellant's income might seem preferable to or more reasonable than the one ordered. *See* Labine v. Vincent, *supra*, at 537–539, 91 S.Ct. 1017.

2. We note that the record indicates that the appellant is not living with the mother of his illegitimate child; there is therefore not even an illegitimate "family unit" to be considered. Furthermore, it is uncertain that the paternity of the illegitimate child can now be established. A proceeding to establish paternity and provide for the support of a child born out of wedlock can be brought only within two years after the birth of a child, or within one year after the putative father has ceased making contributions for the support of the child. D.C.Code § 16–2343 (1967). The child is now more than five years old, and it is not clear that the appellant has continued to make any payments to her mother.

The trial court did not abuse its discretion in denying appellant's motion to reduce support payments and in holding him in contempt. Kephart v. Kephart, 89 U.S.App.D.C. 373, 193 F.2d 677 (1951), cert. denied, 342 U.S. 944, 72 S. Ct. 557, 96 L.Ed. 702 (1952); Armstrong v. Armstrong, 241 A.2d 735 (D. C.App.1968).

The judgment of the District of Columbia Court of Appeals is

Affirmed.