Tracy Dionne **MILLER**, by her next friend, Garney Miller, individually and on behalf of all others similarly situated, Plaintiff,

v.

Melvin **LAIRD**, Secretary of the Department of Defense, et al., Defendants.

Civ. A. No. 752–71.

United States District Court, District of Columbia, Civil Division.

Aug. 31, 1972.

C. Christopher Brown and Marilyn M. Fisher, Neighborhood Legal Services, Washington, D. C., for plaintiff.

Laurens H. Silver and Susan G. Alexander, National Legal Program on Health Problems of the Poor, Los Angeles, Cal., amici curiae.

Thomas A. Flannery, U. S. Atty., Joseph M. Hannon, Asst. U. S. Atty., and Mary E. Folliard, Asst. U. S. Atty., Washington, D. C., for defendants.

Before ROBINSON, Circuit Judge, and HART and GREEN, District Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

By enactment of the Dependents' Medical Care Act [1] in 1956 and amendments thereto in later years,[2] Congress has sought "to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents."[3]

---

1. Act of June 7, 1956, ch. 374, 70 Stat. 250, as amended by Act of Sept. 2, 1958, Pub.L. No. 85–861, 72 Stat. 1445; Act of Sept. 30, 1966, Pub.L. No. 89–614, 80 Stat. 866; Act of Nov. 2, 1966, Pub.L. No. 89–718, 80 Stat. 1117; Act of Oct. 21, 1970, Pub.L. No. 91–481, 84 Stat. 1082, codified at 10 U.S.C. § 1071 et seq. (1970). Subsequent references are to the Act as codified.

2. See note 1, *supra.*

3. 10 U.S.C. § 1071 (1970).

The "uniformed services" are principally the Armed Forces,[4] and the availability of benefits differs somewhat among the several classes of eligibles. Service members "on active duty [are] entitled to medical and dental care in any facility of any uniformed service";[5] certain other service members[6] "may, upon request, be given" such care in any such facility.[7] Dependents of service members dying on active duty or completing more than thirty days thereof are "entitled, upon request, to" enumerated types of care;[8] dependents of service members who then are or at death were entitled to retired, retainer or equivalent pay[9] "may, upon request, be given" the same type of care.[10] While care for service members on active duty is largely free and is unconditionally offered,[11] care for certain other service members[12] and for any dependents is subject to standardized charges[13] and "to the availability of space and facilities and the capabilities of the medical and dental staff."[14]

 Eligible dependents include, under specified conditions, the service member's spouse, children, parents and parents-in-law.[15] But by 10 U.S.C. § 1072(2)(E)—a provision of the Act as amended and codified[16]—child-dependency is limited to "an unmarried legitimate child, including an adopted child or a step-child," who meets designated requirements.[17] This exclusion of illegitimate children from benefits under the Act is the target of this litigation.[18]

---

4. " 'Uniformed services' means the armed forces and the Commissioned Corps of the Environmental Science Services Administration and of the Public Health Service." 10 U.S.C. § 1072(1) (1970).

5. 10 U.S.C. § 1074(a) (1970).

6. These are members or former members of a uniformed service entitled to retired or retainer pay or equivalent pay. 10 U.S.C. § 1074(b) (1970).

7. 10 U.S.C. § 1074(b) (1970).

8. 10 U.S.C. §§ 1076(a), 1077 (1970). Additionally, "[t]o assure that medical care is available for spouses and children of members of the uniformed services who are on active duty for a period of more than thirty days," authority is conferred to negotiate contracts for the provision of the same types of care, with exceptions, as are available to them in facilities of the uniformed services. 10 U.S.C. § 1079 (1970). Eligible dependents may elect to receive care either in a governmental facility or under a plan contracted for. 10 U.S.C. § 1080 (1970).

9. 10 U.S.C. § 1076(b) (1970).

10. 10 U.S.C. §§ 1076(b), 1077 (1970).

11. See text *supra* at note 5 and note 12, *infra*.

12. Officers and former officers of a uniformed service who are hospitalized pay an amount equal to the part of the charge that is attributable to subsistence. Enlisted members and former enlisted members of a uniformed service who are entitled to retired, retainer or equiva-

lent pay are not so charged. 10 U.S.C. § 1075 (1970).

13. 10 U.S.C. §§ 1075, 1078(a)–(b) (1970).

14. 10 U.S.C. § 1074(b), 1076(a)–(b) (1970).

15. 10 U.S.C. §§ 1072(2)(A)–(D) (1970).

16. See note 1, *supra.*

17. The requirements are that the child "either—(i) has not passed his twenty-first birthday; (ii) is incapable of self-support because of a mental or physical incapacity that existed before that birthday and is, or was at the time of the member's or former member's death, in fact dependent on him for over one-half of his support; or (iii) has not passed his twenty-third birthday, is enrolled in a full-time course of study in an institution of higher learning approved by the Secretary of Defense or Secretary of Health, Education, and Welfare, as the case may be, and is, or was at the time of the member's or former member's death, in fact dependent on him for over one-half of his support". 10 U.S.C. § 1072(2)(E) (1970).

18. We note that service regulations implementing the Act purport to extend eligibility for medical care to "[a]n unmarried child or stepchild who was illegitimate at the time of birth and who is, or was at the time of death of the active duty or retired member, dependent on the member for more than one-half of his support, residing in the member's household or in a dwelling place provided or maintained by the member," and who

The minor plaintiff was born out of wedlock four years ago. The mother, then 14 years of age, remains unmarried to the father. Three years ago, paternity was established judicially and the father was directed to make weekly payments toward the support of the child.[19] When suit was filed, the child resided with her mother and maternal grandmother.[20] The father was then serving in the Army in Vietnam and was not contributing to the child's support.[21]

The complaint alleges the understandable desire of the mother and grandmother to qualify the child for medical care[22] at a local Army hospital in the event of future illness. It charges that the Act totally prohibits illegitimates from participating in the benefits it confers and that the prohibition is violative of the Fifth Amendment. It seeks a judgment declaring that the exclusion is invalid and an injunction restraining its observance. Defendants,[23] governmental officials charged with responsibilities bearing on this controversy, have appeared in support of the statute. We conclude that plaintiff must prevail, and accordingly award the relief sought.[24]

meets other conditions specified. Army Reg. No. 40–121 § 1–2f(2)(b) (1970). To the extent that this regulation may have been intended to apply to a child born illegitimate and never thereafter legitimatized, it draws no support from the Act. Section 1072(2)(E), in plain words, restricts the class of eligible child-dependents to "legitimate" children, and neither the statutory language nor the legislative history of the Act indicates any administrative authority to create exceptions to the ban. An administrative interpretation of a statute weighs as evidence of its true meaning only where the statute is ambiguous. Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933); Louisville & N. R. R. v. United States, 282 U.S. 740, 759, 51 S.Ct. 297, 75 L.Ed. 672 (1931). That certainly is not the case here. Nor is there any discernible basis upon which the regulation could achieve operation independently of the Act.

We consider the regulation valueless in this litigation.

19. The proceeding leading to these orders was brought in the Juvenile Court of the District of Columbia. The father, even then an adult, appeared and the court adjudged him to be the father of the child. The father and mother then appeared before a hearing officer, whereupon the father acknowledged understanding of his legal obligation to pay for the support of the child and, for purposes of entry of an order requiring support, waived a hearing before a judge. A support order was subsequently entered, security for payment was suspended, and the father was placed on probation conditioned on payments as ordered.

20. It is unclear as to whether either the child or the mother has ever resided in the father's household.

21. It is unclear as to what, if any, contributions the father has ever made to the child's support.

22. By our use of the term "medical care," we refer to any and all medical and dental services and care to which there is entitlement.

23. Defendants are the Secretary of Defense and the Commanding Officers of Walter Reed Army Medical Center and Walter Reed General Hospital.

24. Plaintiff has sought to have this case certified as a class action on behalf of all illegitimate children who, but for the fact that they were born out of wedlock, would be eligible for assistance under the Dependents' Medical Care Act. All the prerequisites of Fed.R.Civ.P. 23(a) are present here: a class so large that joinder of its members would be impracticable; questions of law and fact common to the class; claims by plaintiff which are typical of those of the class; and fair and accurate protection of the interests of the class by plaintiff.

The case fits into the category defined in 23(b)(2) since defendants here have refused to act on statutory grounds generally applicable to all illegitimate children of service members, and thus final declaratory and injunctive relief is appropriate with respect to the class as a whole.

Since a class action would fulfill the salutary goal of limiting identical litigation without affecting the rights of the parties in the common question, we hereby grant the plaintiff's motion for certification as a class action, as hereinafter defined. See text infra following note 106.

## I

■■ Where, as here, a claim of unconstitutional discrimination is leveled against a *federal* statute, the Fourteenth Amendment's Equal Protection Clause is not available, and one can look only to the Due Process Clause of the Fifth Amendment for protection.[25] The Supreme Court has declared, however, that the concepts of equal protection and due process are not mutually exclusive, but rather that they both stem "from our American ideal of fairness".[26] The Court has, too, repeatedly invalidated federal legislation fostering discrimination so unjustifiable as to fly in the face of due process.[27] The question for decision in this case is whether the statutory exclusion under scrutiny merits condemnation on that ground.

In determining whether a particular statutory classification contravenes due process as secured by the Fifth Amendment, courts have generally utilized one or the other of two standards—the "rational basis"[28] or "compelling state interest" tests[29]—which do service in litigation arising under the Equal Protection Clause. The latter test, which is made the stricter of the two, has traditionally been employed only where the discriminatory classification endangers the exercise of one of the more basic constitutional rights.[30] We are not put to a categorization of rights or choice of standards in this case, however, for by either approach the exclusion complained of must fall.

In recent years, four cases dealing with the rights of illegitimate children to claim or enjoy particular statutory benefits have been decided by the Supreme Court,[31] and in all but one the Court has applied the rational basis

25. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). See also Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Shapiro v. Thompson, 394 U.S. 618, 642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964).

26. Bolling v. Sharpe, *supra* note 25, 347 U.S. at 499, 74 S.Ct. at 694.

27. See, *e. g.*, Shapiro v. Thompson, *supra* note 25; Schneider v. Rusk, *supra* note 25; Bolling v. Sharpe, *supra* note 25, 347 U.S. at 500, 74 S.Ct. 693.

28. In Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911), the "rational basis" test was held to require one who assailed a particular statutory classification to "carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." See Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Morey v. Doud, 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Louisville Gas Co. v. Coleman, 277 U.S. 32, 37, 48 S.Ct. 423, 72 L.Ed. 770 (1928); F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

29. "Compelling state interest" requires more than the showing of a rational relationship to some colorable state interest; the state must show the classification is necessary to protect against "the gravest abuses, endangering paramount interests". Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963), citing Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

30. See, *e. g.*, Shapiro v. Thompson, *supra* note 25, 394 U.S. at 634, 89 S.Ct. 1322 (right to travel); Sherbert v. Verner, *supra* note 29, 374 U.S. at 406, 83 S.Ct. 1790 (right to practice one's religion); Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (freedom of association); Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (right to live where one chooses); Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to procreate).

31. Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1917, 28 L.Ed.2d 288 (1971); Glona v. American Guar. & Liab. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

test.[32] In Weber v. Aetna Casualty & Surety Company,[33] the most recent of these cases, the Court isolated an indispensable feature of any measure of the constitutionality of state-imposed classifications:

The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose.[34]

And "[t]hough the latitude given state economic and social regulation is necessarily broad, when state statutory classifications approach sensitive and fundamental personal rights, [the] Court exercises a stricter scrutiny".[35] Thus, said the Court, "[t]he essential inquiry in all the foregoing cases is . . . inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?"[36] We turn now to a closer look at the Court's four decisions to ascertain whether the *Weber* criteria furnish the standard properly to be applied in evaluating the congressional classification challenged here.

## II

The constitutional dignity of the general right of illegitimate children to share equally with legitimate children in governmentally-conferred benefits was first recognized by the Supreme Court in Levy v. Louisiana[37] and Glona v. American Guaranty & Liability Insurance Company,[38] both decided in 1968.

In *Levy,* the Court held that the Louisiana wrongful death statute[39] created an unconstitutional distinction between legitimate and illegitimate children by prohibiting the plaintiffs, who were in the latter category, from bringing a suit for damages precipitated by the death of their mother. "Legitimacy or illegitimacy of birth," the Court said, "has no relation to the nature of the wrong allegedly inflicted on the mother",[40] and it was "invidious to discriminate against [the illegitimate offspring] when no action, conduct or demeanor of theirs [was] possibly relevant to the harm that was done the mother."[41]

*Glona,*[42] a companion case to *Levy,* struck down a similar provision of Louisiana's wrongful death statute which prohibited a mother from recovering for the death of an illegitimate child. As in *Levy,* the Court found "no possible rational basis" upon which the disability and illegitimacy could be causally connected,[43] and held that "[w]here the claimant is plainly the mother, the State denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock."[44]

In Labine v. Vincent,[45] the Court declined to apply *Levy* and *Glona* to invalidate Louisiana's statutory scheme of intestate succession, which allowed acknowledged illegitimate children to inherit only if there were no surviving legitimate children, lineal or collateral relatives, or wife.[46] The *Labine* decision did not invoke the rational basis test,[47] but as later explained in *Weber,* "reflected, in major part, the traditional

---

32. The exception is Labine v. Vincent, *supra* note 31, where the Court disposed of the equal protection claim without reaching the rational basis determination. 401 U.S. at 536 n. 6, 91 S.Ct. 1917.

33. *Supra* note 31.

34. 406 U.S. at 172, 92 S.Ct. at 1405.

35. *Id.*

36. *Id.*

37. *Supra* note 31.

38. *Supra* note 31.

39. La.Civ.Code.Ann. art. 2315 (Supp. 1967).

40. 391 U.S. at 72, 88 S.Ct. at 1511.

41. *Id.* at 72, 88 S.Ct. at 1511.

42. *Supra* note 31.

43. 391 U.S. at 75, 88 S.Ct. 1515.

44. *Id.*

45. *Supra* note 31.

46. La.Civ.Code.Ann., arts. 206, 919 (1952).

47. 401 U.S. at 536 n. 6, 91 S.Ct. 1917.

deference to a State's prerogative to regulate the disposition at death of property within its borders."[48] Any doubts as to the viability of *Levy* and *Glona* after *Labine* were resolved in *Weber*,[49] the Court's latest pronouncement on the rights of illegitimate children under the Equal Protection Clause. We have concluded that the principles set forth in *Weber* are controlling in this case and, we believe, the following analysis so demonstrates.

*Weber* presented the Court with a challenge to Louisiana's workmen's compensation statute which permitted dependent unacknowledged illegitimate children to recover death benefits only to the extent that the maximum compensation payable was not exhausted by the decedent's legitimate children.[50] The decedent in *Weber* had four legitimate children and one unacknowledged illegitimate child living with him and dependent on him for their sole support at the time of his death,[51] and a second illegitimate child was born posthumously. Following the father's death, claims were filed on behalf of all six children for workmen's compensation. In the meantime, the four legitimate children recovered in excess of the maximum allowable benefits from the settlement of a suit against a third party tortfeasor. In the compensation case, the trial judge awarded the maximum amount to the four legitimate children and declared that the award had been satisfied out of the tort settlement.[52] This left nothing for the two illegitimate children who, by their mother, challenged the statute on equal protection grounds. Certiorari was granted from the decision of the Supreme Court of Louisiana,[53] which had affirmed the trial court's judgment.

The Supreme Court began by distinguishing Labine v. Vincent[54] on two grounds. First, *Labine* was based primarily on the Court's policy of deference to state regulation of the devolution at death of property within its borders.[55] Second, the decedent in *Labine* could have left property to his daughter simply by formally legitimatizing her through marriage to her mother, or by executing a will.[56] *Weber*, in contrast, did not involve an area of regulation traditionally left to state law; nor did the decedent have any way of changing the disfavored status of his illegitimate children under the workmen's compensation statute.[57]

Having rejected *Labine* as the applicable precedent, the *Weber* court relied instead on *Levy*,[58] and pointed out a number of similarities between the statute invalidated in *Levy* and the one challenged in *Weber*.[59] The crowning consideration was that even though illegiti-

48. Weber v. Aetna Cas. & Sur. Co., *supra* note 31, 406 U.S. at 171, 92 S.Ct. at 1404.

49. *Supra* note 31.

50. La.Rev.Stat., tit. 23, §§ 1021(3), 1232 (1964).

51. Decedent's wife, the mother of the legitimate children, had been committed to a mental hospital. At the time of his death, the decedent was living with the mother of the illegitimate children. Because he was not free to marry her, there was no way under Louisiana law that the decedent could have acknowledged her two children. La.Civ.Code. Ann., art. 204 (1952).

52. 406 U.S. at 167, 92 S.Ct. 1400.

53. Stokes v. Aetna Cas. & Sur. Co., 257 La. 424, 242 So.2d 567, cert. granted,

404 U.S. 821, 92 S.Ct. 119, 30 L.Ed.2d 49 (1971).

54. See notes 45–49, *supra*.

55. 406 U.S. at 170, 92 S.Ct. 1400.

56. *Id.* at 170, 171, 92 S.Ct. 1400.

57. *Id.* See note 51, *supra*.

58. *Supra* note 31.

59. Both statutes involved state-created compensation schemes, designed to provide close relatives and dependents of a decedent a means of recovery for accidental death. Each represented a modification of harsh common law rules which would have denied recovery in tort. In *Weber*, the recovery sought under the workmen's compensation statute was in lieu of an action under the wrongful death statute at issue in *Levy*. 406 U.S. at 171, 172, 92 S.Ct. 1400.

mates were not absolutely barred from benefits, each statute denied them rights which were available to other dependent children.[60]

As in *Levy*, the Court applied the rational basis test [61] to the statutory classification, which barred unacknowledged illegitimate children from benefits.[62] The State advanced three grounds in support of the scheme. First, it argued that its interest in protecting "legitimate family relationships" [63] required preferential treatment for legitimate children. In response, the Court paraphrased its observation in *Glona* [64] that persons are not likely to shun illicit relations merely "because the offspring may not one day reap the benefits of workmen's compensation." [65]

The second argument on behalf of the State was that the statutory distinction between legitimate and illegitimate children was based on the probability that the illegitimate child is less likely to be under care in the home of his father or even supported by him.[66] The Court rejected this argument because the statutory compensation scheme in question required a showing of dependency as a prerequisite to *anyone's* recovery, and because the acknowledgment necessary for equal recovery rights might be impossible to effectuate.[67]

The State's final contention was that possible problems of locating and identifying illegitimate children supplied a rational basis for the statutory distinction.[68] Again the Court noted that by limiting recovery to dependents

of the decedent, the State had substantially lessened the probability of any dilemma incidental to finding illegitimate children or to determining uncertain claims of parenthood.[69] Thus the imposition of the distinction had not extinguished any difficulties of proof.[70]

In sum, no rational justification for differentiating legitimate and illegitimate children was shown, and that was fatal. The Court concluded by pointing out that

> . . . imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where —as in this case—the classification is justified by no legitimate state interest, compelling or otherwise.[71]

While all the Supreme Court cases thus far treating the constitutional rights of illegitimate children have involved state statutes, other federal courts have found violations of the Due Process Clause of the Fifth Amendment in congressional legislation which discriminates against children born out of wedlock.[72] These cases have involved

60. *Id.*

61. See note 28, *supra*.

62. 406 U.S. at 172, 92 S.Ct. 1400.

63. *Id.*

64. 391 U.S. at 75, 88 S.Ct. 1515.

65. 406 U.S. at 172, 92 S.Ct. 1400, 1405.

66. *Id.*, 406 U.S. at 173, 92 S.Ct. 1400.

67. *Id.* at 173, 174, 92 S.Ct. 1400.

68. *Id.*

69. *Id.*

70. *Id.*

71. *Id.*

72. Davis v. Richardson, 342 F.Supp. 588 (D.Conn.1972); Griffin v. Richardson, 346 F.Supp. 1226 (D.Md.1972); Jordan v. Finch, Civil No. 32–69 (D.N.J. Jan. 27, 1970) (unreported). But see Parker v. Secretary of H. E. W., 453 F.2d 850 (5th Cir. 1972); Perry v. Richardson, 440 F.2d 677 (6th Cir. 1971); Garner v. Richardson, 333 F.Supp. 1191 (N.D. Cal.1971).

provisions of the Social Security Act [73] which, like the workmen's compensation scheme in *Weber*,[74] permit certain illegitimate children [75] to recover benefits only where the maximum family allowance is not exhausted by "other dependents." [76]

We conclude in like fashion, that the doctrinal considerations underpinning *Levy*,[77] *Glona* [78] and *Weber* [79] apply with equal vigor to the case at bar. Basic rights do not become any less worthy of protection because federal rather than state law threatens them.[80] Seldom if ever could discriminatory federal legislation that would perish under the Fourteenth Amendment if state-enacted withstand measure by the pledge of equality implicit in due process secured by the Fifth.[81] Surely nothing in our constitutional jurisprudence suggests governmentally-imposed distinctions which infringe upon "sensitive and fundamental

personal rights" [82] command more charitable treatment under the one guaranty than the other. If the statutory classification attacked here would not survive equal protection scrutiny as part of a state-created scheme of medical care, it would be "unthinkable"[83] that it would not be "so unjustifiable" [84] a discrimination that it could not endure in federal legislation.[85]

## III

Returning to our consideration of the exclusion of illegitimate children from medical benefits which Section 1072(2)(E) effects, we find that section even more questionable constitutionally than the statutes invalidated in *Weber* [86] and other recent federal court decisions.[87] While those statutes only gave preference to certain other dependents over dependent illegitimate children in distributing benefits, Section 1072(2)(E)

**73.** Social Security Act §§ 203(a), 216(h)(3), 42 U.S.C. §§ 403(a), 416(h)(3) (1970).

**74.** *Supra* note 31.

**75.** Not all illegitimate children are in the disfavored class under § 203(a). That section excludes those illegitimate children who are eligible to claim an intestate share in the insured's personal property in the state of his domicile. Under § 216(h)(2), these children share equally with legitimate children.

Illegitimate children described in § 216(h)(3) are those who would not be eligible to an intestate share, but who have been acknowledged in writing by the insured; or who have been decreed by court support order to be the insured's children; or who have been shown by evidence satisfactory to the Secretary of H.E.W. to be the children of an insured and who were living with him or supported by him at the time they became entitled to benefits.

**76.** Morris v. Richardson, Griffin v. Richardson and Davis v. Richardson, all *supra* note 72, relied on *Weber* in striking down the statutory distinction. Parker v. Secretary of H. E. W., Perry v. Richardson and Garner v. Richardson, all *supra* note 72, were all decided prior to *Weber*. *Parker* and *Garner* relied on

Labine v. Vincent, *supra* note 31, to sustain the statute.

**77.** See text *supra* at notes 37–41.

**78.** See text *supra* at notes 42–44.

**79.** See text *supra* at notes 49–71.

**80.** See Bolling v. Sharpe, *supra* note 25, 347 U.S. at 500, 74 S.Ct. 693; Hurd v. Hodge, 334 U.S. 24, 35–36, 68 S.Ct. 847, 92 L.Ed. 1187 (1948). *Cf.* Lee v. Habib, 137 U.S.App.D.C. 403, 410 n. 21, 424 F. 2d 891, 898 n. 21 (1970); Washington v. United States, 130 U.S.App.D.C. 374, 381–382, 401 F.2d 915, 922–923 (1968); Bolton v. Harris, 130 U.S.App.D.C. 1, 4 n. 3, 395 F.2d 642, 645 n. 3 (1968); Hobson v. Hansen, 269 F.Supp. 401, 493 (D.C.1967).

**81.** See cases cited *supra* note 80. For the converse of this proposition, see Richardson v. Belcher, *supra* note 25, 404 U.S. at 81, 92 S.Ct. 254.

**82.** Weber v. Aetna Cas. & Sur. Co., *supra* note 31, 406 U.S. at 173, 92 S.Ct. 1400.

**83.** Bolling v. Sharpe, *supra* note 25, 347 U.S. at 500, 74 S.Ct. 693.

**84.** *Id.* at 499, 74 S.Ct. 693.

**85.** *Cf.* Hurd v. Hodge, *supra* note 80, 334 U.S. at 35–36, 68 S.Ct. 847.

**86.** *Supra* note 31.

**87.** See notes 72–77, *supra*.

precludes illegitimate children altogether from obtaining medical assistance under the Act.[88] As noted earlier, Congress has stated that the objective sought by enactment of the Dependents' Medical Care Act is "to create and maintain high morale in the uniformed services by providing" the program it sets forth.[89] Given this express statutory purpose, the critical question becomes whether or not the total elimination of illegitimate children from the category of eligible dependents bears any rational relationship to that goal.[90]

■ The first basis advanced by defendants for the disqualification of those in plaintiff's class is that Congress could reasonably conclude that the statutory purpose would be served best by selecting for benefits those children about whom a service member would be most concerned. This notion of a general lack of parental concern for the welfare of illegitimate children is nothing more than sheer speculation. In light of the many subtle motivations in human affection and behavior, an assumption that parents care only about their legitimate children, as history teaches us, would be impossible to substantiate. Such a premise is entirely too precarious to comprise a rational supporting basis for this classification.[91]

■ The second justification put forth by defendants for discriminating against children born out of wedlock is the problem of proof that might be encountered in endeavoring to ascertain the paternity of such children. To be sure, in many cases paternity is difficult to verify, and we do not doubt the validity of requirements reasonably calculated to protect against the assertion of fraudulent claims.[92] But there is no such difficulty here for plaintiff's paternity and need for support have been determined by a court of law.[93] An examination of other federal statutes conferring benefits on dependents reveals a number of available safeguards against spurious claims by illegitimate children.[94] Moreover, the Supreme Court has made it plain that the prevention of fraud, though clearly a valid governmental objective, will not save an otherwise invidious statutory discrimination against an entire class of persons where less drastic means are available to minimize the hazard.[95] Thus, we find no

---

88. See note 18, supra, for a discussion of Army Regulation 40–121, § 1–2(f)(2)(b) which attempts to modify § 1072(2)(E) by including certain illegitimate children in the category of eligible dependents.

89. 10 U.S.C. § 1071 (1970).

90. "If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment." Richardson v. Belcher, supra note 25, 404 U.S. at 84, 92 S.Ct. at 258.

91. A similar argument was made in Weber in support of favoring legitimate children because they were more likely to be in the ambit of familial care and affection. 406 U.S. at 173, 174, 92 S.Ct. 1400. The Court did not find this contention compelling with respect to a statutory scheme where dependency is a prerequisite for anyone's recovery of benefits. See text accompanying note 67, supra.

92. Congress has usually accommodated this problem by imposing requirements specifically addressed to it, and not by disadvantaging an entire class of persons many of whom would present no real problem at all. See note 94, infra, and accompanying text.

93. See notes 19–20, supra. Compare Weber v. Aetna Cas. & Surety Co., supra note 31, 406 U.S. at 173, 92 S.Ct. 1400; Glona v. American Guar. & Liab. Ins. Co., supra note 31, 391 U.S. at 76, 88 S.Ct. 1515.

94. See, e. g., the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. § 902(14) (1970); the Veteran's Administration Act, 38 U.S.C. § 101(4) (1970); the Social Security Act, 42 U.S.C. § 416 (h)(3) (1970). See generally Note, The Rights of Illegitimates Under Federal Statutes, 76 Harv.L.Rev. 337 (1962).

95. Shapiro v. Thompson, supra note 25, 394 U.S. at 637, 89 S.Ct. 1322. Although Shapiro actually applied the stricter "compelling state interest" test to a state's one-year residence requirements for welfare benefits, the Court indicated unmistakably that the statutory classification

support for the discrimination in the need to avoid problems of proof.

██ Defendants' third argument in support of Section 1072(2)(E) is that its disqualification of illegitimate children tends to preserve the integrity of marriage and to promote familial relationships sanctioned by law by giving preference in the distribution of limited medical services to the legitimate children of service members. The insuperable problem with this rationale is that there is simply no basis in logic or experience for the assumption that denial of medical care to the potential offspring of legally unsanctioned relationships in fact discourages service members from entering into them. Each time this argument has been raised in the Supreme Court to support discrimination against illegitimates, the Court has rejected it.[96]

To paraphrase the Court in *Weber*:[97] it cannot be thought that persons will shun illicit relations because the offspring may not one day reap the benefits of the Dependents' Medical Care Act.[98]

██ The final justification advanced by defendants for Section 1072(2)(E)'s exclusion of illegitimate children is that given the large number of American service members stationed overseas from 1956 to the present, their inclusion in the group entitled to medical care could result in the duty to provide benefits to a very large number of children born outside the United States, who have no connection with the United States or the uniformed services.[99] This consideration, like the others, bears no rational relationship to the statutory purpose of creating and maintaining high morale in the uniformed services.[100] It cannot be

would fail even under the rational basis test. *Id.* at 638, 89 S.Ct. 1322. Thus, *Shapiro's* rejection of the one-year residence requirement as a "too drastic" means of preventing fraud would seal the fate of the total exclusion of illegitimate children which the statute under review purports to effect. In any event, a rational relationship between a government objective and the means selected for realizing it is as much a prerequisite to constitutionality in due process as in equal protection terms, see West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S. Ct. 578, 81 L.Ed. 703 (1937); Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed.2d 940 (1934); Lapides v. Clark, 85 U.S.App.D.C. 101, 102, 176 F.2d 619, 620, cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed.2d 527 (1949); see also Zemel v. Rusk, 381 U.S. 1, 14, 85 S.Ct. 1271. 14 L.Ed.2d 179 (1965); and it is plainly irrational to deny benefits to all illegitimate children in order to avert the possibility of a few spurious claims. Compare Weber v. Aetna Cas. & Sur. Co., *supra* note 31, 406 U.S. at 174, 175, 92 S.Ct. 1400; Glona v. American Guar. & Liab. Ins. Co., *supra* note 31, 391 U.S. at 76, 88 S.Ct. 1515.

96. Weber v. Aetna Cas. & Sur. Co., *supra* note 31, 406 U.S. at 173, 92 S.Ct. 1400; Glona v. American Guar. & Liab. Ins. Co., *supra* note 31, 391 U.S. at 75–76, 88 S.Ct. 1515.

97. 406 U.S. at 173, 92 S.Ct. 1400.

98. See text *supra* at notes 63–65.
Defendants' reliance here on the holding in Mitchell v. Mitchell, 144 U.S.App.D.C. 246, 445 F.2d 722 (1971), is misplaced. *Mitchell*, a pre-*Weber* decision based on Labine v. Vincent, upheld the preference given to legitimate children in the award of court ordered support payments from the father.
Like *Labine*, *Mitchell* suggests no causal nexus between the limitations on support to illegitimate children and the preservation of marital integrity. *Weber*, however, made clear that *Labine* rested primarily on the Court's traditional deference to the state's prerogative to regulate the intestate distribution of property. Thus, as *Mitchell's* underlying rationale, *Labine* stands by itself.
Moreover, if in *Mitchell*-type cases courts were to require equal sharing by illegitimate children, support payments for legitimate children would necessarily be reduced. On that ground, the statute here is easily distinguished since the record does not support the thesis that medical benefits to other dependents would be lowered if illegitimate children were included in the class of eligibles.

99. We do not see how it can be seriously argued that a child born to an American serviceman abroad has "no connection with the United States or the services" unless the ties of parenthood are deemed to be of no consequence.

100. 10 U.S.C. § 1071 (1970). See text *supra* at note 3.

concluded that fathers are prone to be any less solicitous for the medical needs of children born outside the United States than for those born within.[101] In any event, it is clear that American citizenship in and of itself cannot be made a precondition to enjoyment of these benefits, even where the effort is to preserve limited welfare benefits for citizens by withholding them from non-citizens.[102]

If the thrust of defendants' argument is that the Federal Government out of economic necessity must limit expenditures under the Act, that still would provide no justification for precluding children born out of wedlock from receiving benefits. While the Government may legitimately attempt to conserve its fisc, it may not accomplish that goal by drawing invidious classifications.[103] If problems of proof are oppressively increased in particular cases involving illegitimate children born outside the United States, suitable remedies may be found by reference to other federal statutes, which meet the cases presenting those problems without arbitrarily exterminating those which do not.[104] In short, we find the argument that denial of benefits to *all* illegitimate children is necessary to prevent illegitimates fathered by American service members overseas from receiving medical assistance to be wholly without merit as a rational basis for the discrimination in Section 1072(2)(E).

No acceptable explanation has been advanced by defendants for the classification in Section 1072(2)(E) which wholly denies medical care to dependent illegitimate children of military personnel. Applying that "stricter scrutiny" required by *Weber* where "sensitive and fundamental personal rights" [105] are involved, we find the bases suggested by defendants to be too far-fetched to sustain the distinction. To uphold this classification would be to sanction a discrimination based on a condition over which plaintiff and those in her class have no control—a denial, purely on biological grounds, of rights enjoyed by others as a matter of course. This is hardly less invidious than imposing criminal penalties for a condition which an individual is powerless to change.[106] Accordingly, we hold that Section 1072(2)(E)'s ban on benefits to dependent illegitimate children is so utterly lacking in rational justification as to deny to plaintiff, and other dependent illegitimate children whose paternity has been judicially determined, due process of law in violation of the Fifth Amendment.

In so holding, we join the growing number of courts which have declined to draw lines between legitimates and illegitimates in creating and applying statutes which benefit children.[107] Whatever may be society's view of children born out of wedlock, it is clear that the concepts of equality em-

---

101. See text accompanying note 92, *supra.*

102. Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

103. Shapiro v. Thompson, *supra* note 25, 394 U.S. at 633, 89 S.Ct. 1322; Buchanan v. Warley, 245 U.S. 60, 81, 38 S.Ct. 16, 62 L.Ed. 149 (1917).

104. See note 94, *supra.*

105. 406 U.S. at 172, 92 S.Ct. at 1405.

106. See Robinson v. California, 370 U.S. 660, 666–667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

107. See, *e. g.*, Weber v. Aetna Cas. & Sur. Co., *supra* note 31; Glona v. American Guar. & Liab. Ins. Co., *supra* note 31;

Levy v. Louisiana, *supra* note 31, Griffin v. Richardson, *supra* note 72; Davis v. Richardson, *supra* note 72; Jordan v. Finch, *supra* note 72; Metropolitan Life Ins. Co. v. Thompson, 368 F.2d 791 (3d Cir. 1966), cert. denied sub nom. Thompson v. Thompson, 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967); In re Woodward's Estate, 230 Cal.App.2d 113, 40 Cal.Rptr. 781 (3d Dist.Ct.App.1964); State v. Russell, 68 Wash.2d 748, 415 P.2d 503 (1966), aff'd en banc 73 Wash.2d 903, 442 P.2d 988 (1968); In re a Minor, 39 Wash.2d 744, 238 P.2d 914 (1951). See generally H. Krause, Illegitimacy: Law and Social Policy (1971).

bodied in due process do not tolerate laws which discriminate solely on the basis of the status of birth.[108] As one court has stated, "there are no illegitimate children, only illegitimate parents",[109] and statutes, such as the one here, which visit upon innocent children the consequences of their parents' misbehavior are constitutionally unbearable.[110]

Plaintiff's motion for summary judgment will be granted. Plaintiff and the members of her class are declared eligible for medical care under the Dependents' Medical Care Act, and are entitled to be registered for care under the Act. Defendants and those acting by their authority will be permanently enjoined from refusing to register and from denying medical and dental care to plaintiff and the members of her class merely because of the illegitimate status of their birth.

---

108. Weber v. Aetna Cas. & Sur. Co., *supra* note 31, 406 U.S. at 175, 92 S.Ct. 1400.

109. In re Woodward's Estate, *supra* note 107, 40 Cal.Rptr. at 784.

110. Compare Weber v. Aetna Cas. & Sur. Co., *supra* note 31, 406 U.S. at 175, 92 S.Ct. 1400.