Ruby M. LUCAS, and Darin E. Lucas, infant minors, by their mother and next friend Belmira Lucas

v.

SECRETARY, DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, United States of America,

Civ. A. No. 4845.

United States District Court,
D. Rhode Island.

Feb. 25, 1975.

Thomas W. Pearlman, Providence, R. I., for plaintiffs.

Everett Sammartino, Asst. U. S. Atty., Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This action is presently before the court to consider the parties' cross-motions for summary judgment. The action was originally filed in 1972 to seek review under 42 U.S.C. § 405(g) of the final decision of the Secretary of the Department of Health, Education and Welfare (hereinafter "Secretary") denying plaintiffs surviving child's benefits under the Social Security Act as the children of a deceased wage earner. 42 U.S.C. § 402(d).

## STATUTORY SCHEME

On October 24, 1968, Belmira Lucas filed for Surviving Child's Insurance benefits on behalf of her minor children Ruby Marie Lucas and Darin Edward Lucas, on the earnings record of Robert E. Cuffee, a deceased insured. The Social Security Act (the "Act"), 42 U.S.C. § 402(d), details who is eligible for such benefits and provides, in pertinent part:

"[§ 402] *Child's insurance benefits*

(d)(1) Every child (as defined in section 416(e) of this title) . . . of an individual who dies a fully or currently insured individual, if such child—

(A) has filed application for child's insurance benefits, [and]

\*       \*       \*       \*       \*       \*

(C) was dependent upon such individual—

\*       \*       \*       \*       \*       \*

(ii) if such individual has died, at the time of such death,

\*       \*       \*       \*       \*       \*

shall be entitled to a child's insurance benefit."

Thus, in theory, in order to be eligible for surviving child's benefits, an applicant must establish, first, that he is the child of the deceased insured and, second, that he was dependent upon the deceased insured at the time of the latter's death. The Act goes on to define the term "child" in 42 U.S.C. § 416(e) and (h). Subsection (e) provides that "child" includes a legitimate òr legally adopted child of an individual and certain step-children. In addition, subsection (h) provides that certain biological children of the deceased, although considered by law to be illegitimate, also fall within the statutory definition of "child." These categories are described in the following statutory provisions. Section 416(h)(2)(A) of 42 U.S.C. provides that the statutory term "child" includes a claimant who would take property as a child under the laws of intestate succession of the State of the deceased's domicile at death. Section 416(h)(2)(B) provides that the statutory definition of "child" also includes the biological child of a purported marriage which is invalid due to a non-obvious legal impediment. Lastly, § 416(h)(3)(C) includes within the statutory definition of "child" the son or daughter of a deceased insured who:

"[42 U.S.C. § 416(h)(3)(C)(i)] (I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."

A claimant who has established that he meets the statutory definition of "child" under 42 U.S.C. § 416(e) or (h) must next show that he meets the age and marital requirements of 42 U.S.C. § 402(d)(1)(B),[1] and must show that he was "dependent" upon the deceased insured pursuant to 42 U.S.C. § 402(d)(1)(C)(ii). However, § 402(d)(3) conclusively presumes that the requisite dependency exists as to a legitimate or adopted child of the insured, as defined in § 416(e) and (h)(2)(A), and as to any claimant who falls within one of the statutory definitions of "child" provided in § 416(h)(2)(B) or § 416(h)(3).[2] Thus, the net operative effect of these provisions, when read together, is to relieve *all* subclasses of applicants for surviving child's benefits, except one, of the burden of demonstrating actual dependency on, or indeed any monetary support by, the deceased insured at the time of death. The only subclass of applicants required to make a showing of support is described in 42 U.S.C. § 416(h)(3)(C)(ii) as the *illegitimate child of the insured who does not meet the provisions of* either § 416(h)(2) or § 416(h)(3)(C)(i) and who was not living with the insured at the time of his death. It would be fair to say that in a comparison of all the subclasses of illegitimate children defined by § 416(h), the child defined by this last subclass represents that type of illegitimate child with the least factual or legal indicia of legitimacy or commonly recognized family ties to the deceased insured.[3]

## PRIOR PROCEEDINGS

A review of the prior proceedings in this Court demonstrates that the only issue remaining before the Court is to determine whether 42 U.S.C. § 416(h)(3)(C)(ii) violates the equal protection component of the Due Process Clause of the Fifth Amentment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). *See also* Frontiero v. Richardson, 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

This action first came before a single judge to review, under 42 U.S.C. §

---

1. 42 U.S.C. § 402(d)(1)(B) provides:

   "(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

   \*     \*     \*     \*     \*

   (B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22."

2. The standards for determining dependency of a "stepchild", which are not germane to the instant action, are provided in 42 U.S.C. § 402(d)(4). Any qualifications as to the general operation of the Act which would be required to accommodate the position of "step-children" under it are not considered herein.

3. In sum, the statutory classes of children recognized under the Act (excluding "step-children") may be broken down, in the following order:
   1. legitimate children of deceased insured, § 416(e).

      a. legitimate, biological child
      b. legally adopted child
   2. illegitimate child with legal indicia of legitimacy.
      a. by operation of the applicable laws of intestate succession § 416(h)(2)(A).
      b. where the child is born of a seemingly valid marriage invalidated by a non-obvious defect. § 416(h)(2)(B).
      c. where paternity of the child is formally acknowledged by the deceased insured or formally established in judicial proceedings before the insured's death. § 416(h)(3)(C)(i).
   3. illegitimate child with factual indicia of legitimacy. Where the paternity and parental responsibility of the child are factually demonstrated by the fact that, at the time of death, the father was:
      a. living with the child, or
      b. contributing to the support of the child.
      § 416(h)(3)(C)(ii).
   4. illegitimate child. Where only paternity or maternity is factually established, *i. e.*, not eligible under any of the above provisions.

405(g), the Secretary's denial of surviving child's benefits to plaintiffs. In an opinion and order rendered March 2, 1973, the author herein reviewed the record and factual findings made below. Ruling that the Secretary's findings were supported by substantial evidence, the Court accepted as conclusive the following facts. 42 U.S.C. § 405(g). Lucas v. Secretary, Department of Health, Education and Welfare, C.A. # 4845 (D.R.I. 3/2/73) (hereinafter "*Lucas I*"). Robert Cuffee, the deceased insured, lived with plaintiffs' mother, Mrs. Belmira Lucas, from 1948 to 1966. They never married. The two minor plaintiffs, Ruby Marie Lucas and Darin Edward Lucas, were born of this union. However, the Secretary concluded that Cuffee had not acknowledged his paternity in writing, nor had his paternity or support obligations ever been the subject of a judicial proceeding. As a result, the Court concluded the minor plaintiffs did not meet the requirements of 42 U.S.C. § 416(h)(3)(C)(i)(I), (II), or (III), under which plaintiffs' eligibility for the benefits would have been automatic.

The Court next turned its attention to the question of eligibility under § 416(h)(3)(C)(ii). The administrative hearing examiner found, and the Court agreed, that no evidence had been presented to show that Cuffee was living with the plaintiffs at the time of his death. As to the question whether Cuffee had been "contributing to the support of" his children, the minor plaintiffs herein, the Court stated:

"The term 'contributing to the support of' means regular and substantial support, and is not satisfied by occasional gifts and minor contributions at irregular intervals. Turley v. Cohen, 325 F.Supp. 1067, 1070 (D.W.Va. 1970); Hupp v. Celebrezze, 220 F. Supp. 463 (N.D.Iowa 1962); Carey v. Social Security Board, 62 F.Supp. 458 (W.D.Ky.1945). In reviewing the administrative determination that Cuffee was not contributing to the support of the plaintiffs, this Court must consider whether such a determination is supported by substantial evidence. In Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966), the court defined 'substantial evidence' as

'. . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a scintilla of evidence, but may be somewhat less than a preponderance.'

\*   \*   \*   \*   \*   \*

In any event, a conclusion that plaintiffs received no support or just occasional irregular support from the insured during the last year of his life is supported by substantial evidence. The fact that this Court might have assessed the evidence and concluded differently is irrelevant. The finding of defendant that Robert Cuffee was neither living with nor contributing to the support of the plaintiffs is affirmed."

*Id.*, slip op. at 8–10.

Although it concluded that plaintiffs were not eligible under § 416(h)(3)(C)(ii), the Court remanded the case for an administrative determination as to whether the plaintiffs were legitimate children under Rhode Island law as the issue of a valid common law marriage. If so, the Court reasoned, each plaintiff would have been entitled to take by intestacy a child's share of the personal property of their father, whose domicile at death was Rhode Island, and would thereby meet the eligibility requirements for benefits under 42 U.S.C. §§ 402(d)(3) and 416(h)(2)(A) despite the fact that plaintiffs had failed to make a satisfactory showing of factual dependence on Cuffee for support at the time of his death. R.I.G.L. §§ 33–1–10, 33–1–1, and 15–8–21 (1956, 1969 Reenactment). *Lucas I*, slip op. at 11–16.

On remand, the Secretary ruled that Belmira Lucas and Robert Cuffee had never entered into a valid common law marriage and that, as a result, their children were not eligible for the bene-

fits sought herein under 42 U.S.C. § 416(h)(2)(A). Pursuant to 42 U.S.C. § 405(g), plaintiffs once again sought reversal of the Secretary's decision, on two grounds: first, they claimed that the Secretary had erred in his assessment of the evidence and applicable Rhode Island law; and second, they claimed that 42 U.S.C. § 416(h)(3)(C)(ii) was unconstitutional because it conditioned plaintiffs' eligibility on proof of actual dependency without requiring a similar showing of legitimate surviving children. Plaintiffs thereupon moved for summary judgment, seeking both to receive the surviving child's benefits denied them and to enjoin application of 42 U.S.C. § 416(h)(3)(C)(ii).

In an opinion and order rendered August 30, 1974, Lucas v. Secretary, Department of Health, Education and Welfare, C.A.No.4845 (D.R.I.) (hereinafter "Lucas II"), the Court affirmed the Secretary's finding that no common law marriage had ever been contracted and that plaintiffs did not meet the eligibility test of 42 U.S.C. § 416(h)(2)(A). As to plaintiffs' second claim, the Court determined that since plaintiffs sought to enjoin the operation of a federal statute and had raised a substantial question as to its constitutionality, a three-judge court was required to determine that issue. 28 U.S.C. §§ 2282, 2284. Lucas II, slip op. at 15–16. See Norton v. Richardson, 352 F.Supp. 596, 598–599 (D.Md.1972) (hereinafter "Norton I"). See also Maracle v. Richardson, 348 F. Supp. 234 (W.D.N.Y.1972); Davis v. Richardson, 342 F.Supp. 588 (D.Conn. 1972), aff'd, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972). A three-judge court was thereupon convened. Plaintiffs renewed their motion for summary judgment, but did not reassert their earlier request for an injunction against the enforcement of 42 U.S.C. § 416(h)(3)(C)(ii) generally. In Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the Supreme Court held definitively that a single judge has jurisdiction to hear an action under 42 U.S.C. § 405(g) which, al-

though drawing the constitutionality of a federal statute into question, does "not seek affirmatively to interdict the operation of a statutory scheme." Id. at 607–608, 80 S.Ct. at 1371. Cf. Davis v. Richardson, supra, 342 F.Supp. at 589, 593. In view of the great disfavor evinced by the Supreme Court toward unnecessary reference of matters to three-judge courts, Hagans v. Lavine, 415 U.S. 528, 543–544, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), see also Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974), the Court sought to clarify the apparent ambiguity as to the relief sought. In a letter dated February 5, 1975, counsel for the plaintiffs indicated that a reversal of the Secretary's decision alone was sought. In an order entered February 20, 1975, the three-judge court dissolved itself and remanded the case for determination by a single judge. There being no factual issues in dispute, the matter is ripe for summary judgment. Fed.R.Civ.P. 56.

## EQUAL PROTECTION

As is evident from the discussion of the statutory scheme *above*, a claimant seeking surviving child's benefits as the illegitimate child of a deceased insured must meet many more requirements to establish his eligibility than does a legitimate child, who need only establish paternity or maternity, or formal adoption. A simple comparison may be useful. Assuming he meets the age and marital requirements of 42 U.S.C. § 402(d)(1)(B), the legitimate child of a deceased insured need only prove paternity and file for benefits to establish eligibility. A similarly situated illegitimate child, however, must do more than merely prove paternity and file to establish eligibility. He must also show that he could inherit as a child of his father's personalty under the intestacy law of the insured's domicile (42 U.S.C. § 416(h)(2)(A)), or that he was the issue of a marriage invalidated by a non-obvious legal impediment (42 U.S.C. § 416(h)(2)(B)), or that he was formally

acknowledged in writing by the insured as his child, or that paternity was established in judicial proceedings before the insured's death (42 U.S.C. § 416 (h)(3)(C)(i)), or that the insured, at the time of his death, was either living with the claimant or contributing to his support. (42 U.S.C. § 416(h)(3)(C) (ii)). And, of course, if he fails to establish that he meets any of these alternative tests, he will be denied the benefits sought.

Thus, only one subclass of illegitimate children will ultimately be denied surviving child's benefits under this scheme. But it would be entirely simplistic to view these provisions as merely differentiating between various classes of illegitimates, i. e., those who do in fact establish eligibility versus those who do not. *Contra* Jimenez v. Richardson, 353 F.Supp. 1356 (N.D.Ill.1973), rev'd sub nom., Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). Cf. Norton v. Weinberger, 364 F.Supp. 1117 (D.Md.1973), vacated and remanded, 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150 (1974) (hereinafter *"Norton II"*). To the contrary, to be eligible all claimants must establish the biological parenthood of the insured. However, additional burdens are imposed strictly on the basis of illegitimacy of birth. In Frontiero v. Richardson, *supra,* the statutory scheme under attack produced a closely analogous differential in treatment. There, a married male member of the uniformed services was automatically entitled to certain fringe benefits. A married female member of the uniformed services was also entitled to such benefits, but eligibility was also conditioned upon a showing that her husband was actually dependent upon her. As in the case at bar, this additional burden meant that one subclass of married female service people would receive benefits while another subclass (those whose husbands were not factually dependent) would not. Yet the Court had no trouble in recognizing that the challenged statute discriminated on the basis of sex, and not simply between two classes of women.[4] *See also* Jimenez v. Weinberger, *supra.*

Plaintiffs herein claim that the differential treatment embodied in the surviving child provisions of the Act constitutes an invidious discrimination in violation of the Due Process Clause of the Fifth Amendment.

"[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" Schneider v. Rusk, 377 U. S. 163, 168, 84 S.Ct. 1187, 1190, 12 L. Ed.2d 218 (1964), quoted in Frontiero v. Richardson, *supra*, 411 U.S. at 680, n.5, 93 S.Ct. 1764.

4. Rejecting a similar argument advanced in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the Supreme Court, per Justice Powell, stated at 169, 172, 92 S.Ct. at 1403:
"The court below sought to distinguish [Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968)] as involving a statute which absolutely excluded *all* illegitimates from recovery, whereas in the instant case acknowledged illegitimates may recover equally with legitimate children and 'the unacknowledged illegitimate child is not *denied* a right to recover compensation, he being merely relegated to a less favorable position as are other dependent relatives such as parents . . . .' Stokes v. Aetna Casualty & Surety Co., 257 La. 424, 433–434, 242 So.2d 567, 570 (1970).
\* \* \* \* \*

"We do not think *Levy* can be disposed of by such finely carved distinctions. The Court in *Levy* was not so much concerned with the tortfeasor going free as with the equality of treatment under the statutory recovery scheme. Here, as in *Levy*, there is impermissible discrimination. An unacknowledged illegitimate child may suffer as much from the loss of a parent as a child born within wedlock or an illegitimate later acknowledged.
\* \* \* \* \*

" . . . It makes no difference that illegitimates are not so absolutely or broadly barred here as in *Levy;* the discrimination remains apparent." (Emphasis in original). *See also* Davis v. Richardson, *supra.*

### A.

In reviewing a federal law challenged as discriminatory, the Supreme Court has adopted those standards of review developed to test the constitutionality of a state statute under the Equal Protection Clause of the Fourteenth Amendment. *See, e. g.,* United States Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), Frontiero v. Richardson, *supra*; Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), *Cf.* O'Neill v. Dent, 364 F.Supp. 565, 578 (E.D.N.Y.1973). These standards have traditionally been characterized as a two-tiered approach.[5] Where a classification is based upon "suspect" criteria, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), or impinges upon a "fundamental" interest, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), it will be subjected to strict judicial scrutiny and declared invalid unless it is narrowly tailored to fulfill a compelling governmental interest. Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). Other classifications will be subjected to a less demanding test to determine if they "rest upon some ground of difference having a fair and substantial relation to the object of the legislation," Royster Guano Co. v. Virginia, 253 U.S. 412, 415,

40 S.Ct. 560, 561, 64 L.Ed. 989 (1920), quoted in Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). This Court had occasion to consider the proper scope of review under the so-called "rational basis" test in Women's Liberation Union of Rhode Island, Inc. v. Israel, 379 F.Supp. 44, 49–50 (D.R.I. 1974), aff'd, 512 F.2d 106 (1975):

"A review of recent Supreme Court decisions indicates that the highly deferential 'rational basis' test applied by the Court in the 1960's is being reshaped into a meaningful standard of review. The nature of the inquiry under this 'invigorated' test has been variously expressed but certain salient features have emerged. First, the Court will not speculate as to unexpressed permissible state interests which may rationally be furthered by a challenged classification, but will confine its inquiry to articulated or obvious objectives. [Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974)] (Powell, J., concurring); San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Green v. Waterford Board of Ed., *supra.* Second, the Court will not accept factually unsupported assumptions to demonstrate the reasonableness of a challenged classification. United States Dept. of Ag-

---

**5.** The question whether the Supreme Court has forged a third middle-ground test for certain classifications, coined by one circuit court as "strict rationality", Berkelman v. San Francisco Unified School Dist., 501 F.2d 1264, 1269 (9th Cir. 1974), or has revitalized the lower-rung "rational basis" test into a meaningful standard of review, Women's Liberation Union of R. I. v. Israel, 379 F. Supp. 44, 49 (D.R.I.1974), aff'd, 512 F.2d 106 (1975), and discussion *infra,* is the source of much debate and confusion. See Gunther, The Supreme Court, 1971 Term—Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L. Rev. 1, 21 (1972). See also, Green v. Waterford Board of Education, 2 Cir., 473 F.2d 629; *Norton II, supra*; Women's Liberation v. Israel, *supra,* 379 F.Supp. at 49–50. Indeed, on the basis of a very recent Supreme

Court decision, it might be argued that the higher-rung of the Equal Protection ladder, the "strict scrutiny" test is also being reshaped to the extent that one might speculate as to the future breakdown of the rigid two-tier test and the emergence of a more fluid, sliding-scale approach to all equal protection challenges. *See* Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (Marshall, J., dissenting). *See also Weber, supra,* 406 U.S. at 173, 92 S.Ct. 1400 (majority opinion) and 181, 92 S.Ct. 1400 (Rehnquist, J., dissenting) *Cf.* San Antonio School District v. Rodriguez, 411 U.S. 1, 98–110, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Marshall, J., dissenting), Chicago Police Department v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). *See generally* Gunther, The Supreme Court, 1971 Term, *supra* at 17–18.

riculture v. Moreno, 413 U.S. 528, 535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). . . . Third, the Court in a number of instances has abandoned the highly deferential formulation of the 'rational basis' test, such as that expressed in McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), that a classification must be sustained 'if any state of facts reasonably may be conceived to justify it' and now demands that the classification bear a substantial or significant relation to the objective it is claimed to further. *Reed, supra* 404 U.S. at 75–76, 92 S.Ct. 251." (footnote omitted).

The first question before us, then, is to determine the appropriate standard of review. Plaintiffs urge that we hold classifications based on legitimacy of birth to be "suspect" and subject the challenged provision to strict judicial scrutiny. They refer us to the majority opinion in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (hereinafter *"Rodriguez"*), wherein the Court, per Justice Powell, enumerated the "traditional indicia of suspectness" thusly:

> "[T]he class is . . . saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."

*Id.* at 28, 93 S.Ct. at 1294.

The Supreme Court's own statements in a succession of cases requiring equality of treatment for illegitimate children [6] demonstrate that the immutable trait of illegitimacy bears all the "traditional indicia of suspectness" set forth in *Rodriguez, supra.* In *Rodriguez,* Justice Marshall commented on the second-class status of illegitimate children:

> "Status of birth, like the color of one's skin, is something which the individual cannot control, and should generally be irrelevant in legislative considerations. Yet illegitimacy has long been stigmatized by our society."

*Id.* at 109, 93 S.Ct. at 1335 (dissenting opinion).

In asking the question "[w]hy should the illegitimate child be denied rights merely because of his birth out of wedlock?", Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436 (1968), the Court found it necessary to proclaim:

> "We start from the premise that illegitimate children are not 'nonpersons.' They are humans, live, and have their being. They are clearly 'persons' within the meaning of the Equal Protection Clause of the Fourteenth Amendment."

*Id.* at 70, 88 S.Ct. at 1510 (footnotes omitted).

Similarly in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) (hereinafter

---

6. With only one exception, the Court in recent years has consistently struck down statutes as denying equal protection of the laws, where the classification was based on illegitimacy of birth. *See* Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L. Ed.2d 363 (1974) ; Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) ; *Weber, supra;* Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) ; Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). *But see* Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). The continued vitality of *Labine,* a 5–4 decision rendered before Justices Powell and Rehn-

quist were appointed to the Court, is somewhat open to doubt. Since *Labine* was decided in 1971, Justice Stewart, who joined the majority opinion *therein,* has stated that illegitimacy, "at least in some settings", is a suspect classification. *Rodriguez, supra,* 411 U.S. at 61, 93 S.Ct. 1278. *But see* Eskra v. Morton, 380 F.Supp. 205, 214, 219 (W.D. Wis.1974). Be that as it may, *Labine* is clearly distinguishable from the instant case for the reasons stated in Davis v. Richardson, *supra,* 342 F.Supp. at 592. *See also Weber, supra,* 406 U.S. at 170, 92 S.Ct. 1400. *Cf.* Miller v. Laird, 349 F.Supp. 1034, 1041 (D.D.C.1972).

*"Weber"*), the Court explained the need for judicial sensitivity and solicitude to classifications which disadvantage illegitimates:

> "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where —as in this case—the classification is justified by no legitimate state interest, compelling or otherwise."

*Id.* at 175–176, 92 S.Ct. at 1406 (footnote omitted).

The standard of review applied in *Weber* is far from clear. The Court first makes reference to the minimum equal protection requirement "that a statutory classification bear some rational relationship to a legitimate state purpose". *Id.* at 172, 92 S.Ct. at 1405 (citations omitted). The Court then states, however:

> "Though the latitude given state economic and social regulation is necessarily broad, *when state statutory classifications approach sensitive and fundamental personal rights, this Court exercises a stricter scrutiny,* Brown v. Board of Education, 347 U. S. 483 [74 S.Ct. 686, 98 L.Ed. 873] (1954); Harper v. Virginia Board of

Elections, 383 U.S. 663 [86 S.Ct. 1079, 16 L.Ed.2d 169] (1966). The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?"

*Id.* 406 U.S. at 172–173, 92 S.Ct. at 1405 (emphasis added).

*See* note 5, *supra.*

And only a few short paragraphs later, the Court rejects the state interest therein advanced as "not compelling". *Id.* at 173, 92 S.Ct. 1400. *Cf.* Miller v. Laird, 349 F.Supp. 1034, 1046 (D.D.C.1972). Equally unclear is the standard of review applied by the Court in its per curiam decision in Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L. Ed.2d 56 (1973), wherein the Court, after reviewing its decisions in Levy v. Louisiana, *supra,* and *Weber, supra,* simply stated:

> "Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that *once a State posits a judicially enforceable right on behalf of children* to needed support from their natural fathers *there is no constitutionally sufficient justification* for denying such an essential right to a child simply because its natural father has not married its mother." Gomez v. Perez, *supra* at 538, 93 S.Ct. at 875 (emphasis added).

*See generally* Eskra v. Morton, 380 F. Supp. 205, 216–217 and n. 13 (W.D.Wis. 1974).

In view of the foregoing discussion and the frequency with which illegitimate children have been required to turn to the courts to seek equality of treatment,[7] this Court is propelled to the

---

7. *See* n. 6 *supra.* For lower court opinions, *see, e. g.,* Beaty v. Weinberger, 478 F.2d 300 (5th Cir. 1973) aff'd, 418 U.S. 901, 94 S.Ct. 3190, 41 L.Ed.2d 1150 (1974); Watts v. Veneman, 155 U.S.App.D.C. 84, 476 F.2d 529

(1973), aff'g, 334 F.Supp. 482 (D.D.C. 1971); *Norton II, supra;* Severance v. Weinberger, 362 F.Supp. 1348 (D.D.C. 1973); Miller v. Laird, *supra,* 349 F.Supp. at 1046 and n. 107; Maracle v. Richardson,

conclusion that illegitimacy should be treated as a "suspect" classification. *See* Eskra v. Morton, *supra* at 215. However, the Court is guided by the recent Supreme Court decision of Jimenez v. Weinberger, *supra*, 417 U.S. at 631–632, 636, 94 S.Ct. 2496, to refrain from reaching such a conclusion if the challenged classification cannot withstand a review under the less stringent "rational basis" test.[8] *Cf.* Women's Liberation v. Israel, *supra*, 379 F.Supp. at 49. We must therefore turn to that question first.

## B.

Keeping in mind the principles outlined *ante* at 1316–1317, we must begin our inquiry with an analysis of Jimenez v. Weinberger, *supra*, the latest Supreme Court decision in this area. Plaintiffs in *Jimenez* were two illegitimate children of Ramon Jimenez, a disabled wage-earner covered by the Social Security Act. Since they were born after the onset of their father's disability, they were ineligible to receive child's insurance benefits. Had they been legitimate, or "legitimated" within the meaning of 42 U.S.C. § 416(h)(2), plaintiffs would have been entitled to the benefits, despite the fact that they were born after Mr. Jimenez's disability occurred.

■ To support this discrimination, the Secretary there, as in the case at bar, claimed that it was designed to prevent spurious claims. Although acknowledging that the prevention of spu-

rious claims was indeed a legitimate governmental interest, the Court concluded that the challenged classification was not reasonably related to that purpose or the purposes of the Act in general. The Court based its conclusions on the fact that the classification was both "under-inclusive," "in that it conclusively excludes some illegitimates in appellants' subclass who are, in fact, dependent upon their disabled parent" and "over-inclusive," "in that it benefits some children . . . who are not dependent on their disabled parent." *Id.* 417 U.S. at 637, 94 S.Ct. at 2502. *Cf.* Tussman and tenBroek, "The Equal Protection of the Laws," 37 Calif.L.Rev. 341 (1949). The Court reasoned that it could not serve the purpose of preventing spurious claims to deny benefits to some children who were in fact dependent nor to grant benefits to some who were in fact not dependent. Addressing itself to plaintiffs' particular situation, the Court remanded the case to give them an opportunity to establish factual dependency. *Jimenez, supra* at 636–638, 94 S.Ct. 2496. In so doing, the Court in effect eliminated the "under-inclusive" aspect of the statute.

■ The statute before this Court is *not* "under-inclusive." Section 416(h)(3)(C)(ii) provided plaintiffs an opportunity to demonstrate their factual dependency. They were unable to do so. However, an analysis of the statutory scheme reveals that it is nonetheless "over-inclusive" in that some of the

---

*supra;* Griffin v. Richardson, 346 F.Supp. 1226 (D.Md.1972), aff'd without opinion, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660; Davis v. Richardson, *supra*.

8. Although the foregoing analysis and conclusion must ultimately be characterized as *obiter dictum*, the Court believes that an extended discussion of the propriety of labelling illegitimacy as "suspect" was warranted in this case in view of the "close question" presented under the "rational basis" test. *Compare* Adams v. Weinberger, No. 73–C–633, unreported op. (E.D.N.Y. 11/25/74), and *Norton II, supra,* each rejecting a constitutional challenge identical to the one at bar. As discussed *infra*, the provisions under attack at first glance appear to over-

come the deficiencies deemed fatal by the Supreme Court in Jimenez v. Weinberger, *supra.* As decisional law on the status of illegitimate children increases and as legislators grow more sensitive to constitutional demands in this area, we see laws enacted, as in the case at bar, which increasingly approach all that is constitutionally required to survive review under the "rational basis" test. If the constitutional threshold of the "rational basis" test had been met, this Court has no doubt that review under the "strict scrutiny" test would have been appropriate and would prove fatal to the challenged classification. However, for reasons which follow, the Court concludes that the statutory scheme does not quite reach that threshold.

"children" conclusively presumed dependent by 42 U.S.C. § 402(d)(3) are not, thereby refuting the claim that the classification is designed to prevent spurious claims.[9] The Secretary virtually concedes as much by arguing:

> "Under the Social Security Act the marriage of the child's parent is a significant act that establishes dependency or *the right to support.* Where no marriage exists it is rational and equitable for Congress to require some other significant act in order to establish *the right of the child to support* from the parent on whose account benefits are claimed." Brief of Defendant in Response to Brief of Amicus Curiae, pp. 2–3 (emphasis added).

The Secretary's argument boils down to this: Congress' intention in delineating who is eligible for child's insurance benefits was not to provide a source of income to *replace* one *actually* lost, but to provide a source of income to those who, based on society's views of parental obligations, *ought* to receive support, whether they had in fact received it or not. The key to the Secretary's argument, as quoted above, is the child's "right to support". The Secretary argues that Congress could and did conclude that it could parcel out benefits on the basis of a parent's greater *obligations* to the offspring of a marriage than to "those which he owes to the offspring of a casual liaison."[10] Defendant's Brief, *supra* at 1. *Cf. Norton II, supra,* 364 F.Supp. at 1127, n. 6. Thus, once again we are confronted with a legislative enactment which visits "society's condemnation of irresponsible liaisons beyond the bonds of marriage" on the head of the child who is in no way responsible for the circumstances of his birth. *Weber, supra,* 406 U.S. at 175, 92 S.Ct. 1400. The statutory scheme unquestionably does further the interest recited by the Secretary. It conditions eligibility on the basis of Congress' views as to who is entitled to support and reflects society's view that legitimate and "legitimated" children are more entitled to support by or through a parent than are illegitimate children. But this is *not* a legitimate governmental interest, and thus cannot support the challenged classification. *Gomez v. Perez, supra.* The Secretary has failed to assert any other government interest to support this classification. Therefore his denial of benefits to the plaintiffs is reversed.

In concluding that 42 U.S.C. § 416(h)(3)(C)(ii) is unconstitutional insofar as it restricts eligibility to those children whose fathers were contributing to their support at death, the Court would point out that the government's legitimate interest in preventing spu-

---

9. With all due respect to the court ruling in *Norton II, supra,* this Court will not engage in far-reaching speculations as to the degree of correlation between the various subclasses of illegitimates and parental support, absent any statistical bases. *Id.* 364 F.Supp. at 1128. *Accord* Miller v. Laird, *supra,* 349 F.Supp. at 1044. *See* Jimenez v. Weinberger, *supra,* 417 U.S. at 636–637, 94 S.Ct. 2496. The facts of the instant case suggest that the presumptions made in support of the instant classification are too facile. Here plaintiffs' mother and Robert Cuffee lived together and shared expenses for 18 years, during which time the plaintiffs were born. For the last two years of his life, Cuffee lived with his mother and contributed to his children's support on an infrequent basis.

Although it is undisputed that plaintiffs are Cuffee's children, they are nonetheless rendered ineligible by 42 U.S.C. § 416(h)(3)(C)(ii) simply because *at the time* of Cuffee's death, he was no longer part of the family unit. It takes little imagination to postulate the situation where, after several years of a marriage, there is a separation and one spouse leaves the home. Like Cuffee, that spouse does not in fact contribute to his or her children's support. Yet upon that spouse's death, the children are automatically entitled to surviving child's benefits if the parent was covered by the Act.

10. Though the Secretary raises this argument here, one can hardly term an 18-year union a "casual liaison".

rious claims is not undermined.[11] The initial burden of establishing biological parenthood may prove insurmountable in many cases where the deceased insured and purported father had never formally acknowledged paternity, and was neither living with the child nor contributing to his support. *See* Miller v. Laird, *supra,* 349 F.Supp. at 1044 and n. 95. *Cf.* Gomez v. Perez, *supra,* 409 U.S. at 538, 93 S.Ct. 872; *Weber, supra,* 406 U.S. at 175, 92 S.Ct. 1400.

The Court recognizes that the remand in Jimenez v. Weinberger, *supra,* on the issue of factual dependency appears to argue against the conclusion reached today. However, two considerations lead this Court to the opposite conclusion. First, on the record before the Supreme Court in *Jimenez,* there was no question that the plaintiffs therein were in fact dependent upon their disabled father. Thus, a ruling narrowly tailored to provide them an opportunity to demonstrate dependency would eliminate the injury and, it may be argued, their standing to challenge the "under-inclusiveness" of the provision as it related to illegitimate children deemed ineligible for failure to demonstrate dependency. *See* Broadrick v. Oklahoma, 413 U.S. 601, 610–611, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). *Cf.* Frontiero v. Richardson, *supra,* especially 417 U.S. at 691, 93 S.Ct. 1764 (concurring opinions of Stewart, J. and Powell, J.). Second, if this were not so, it is difficult to divine the reason behind the Supreme Court's vacation and remand of *Norton II, supra,* a challenge identical to plaintiffs' herein, for reconsideration in light of its ruling in *Jimenez.*[12]

Enter order accordingly.

11. Obviously, today's ruling, if it were to be enforced generally, confers eligibility on some illegitimate children, not previously eligible, who were not in fact dependent on the deceased insured. Yet the Court cannot agree with the conclusion reached by the district court in *Norton II, supra,* 364 F.Supp. at 1129, n. 8, that such a ruling would "alter the purpose, scope or *operation* of the statute in a way the legislature never intended." (emphasis added) (citations omitted). The *Norton II* court reached this conclusion on the premise that the Act's benefits are conferred only on those children who are actually dependent. This Court, like the Supreme Court in *Jimenez, supra,* decided after *Norton II,* has determined that the Act already operates to qualify some children who are not in fact dependent. Thus this deci-

sion would merely expand the class of eligible children, without substantially altering the operation of the Act.
*Cf. Norton II, supra* at 1127, n. 6.

12. The remand may be limited to the fact that the district court in *Norton II* placed some reliance on the lower court decision in *Jimenez v. Richardson, supra,* subsequently reversed by the Supreme Court. As the Court itself noted, in a slightly different context, "[a]s frequently occurs in the case of summary affirmance, [the basis for] the decision . . . is somewhat opaque." Gibson v. Berryhill, 411 U.S. 564, 576, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). *Norton II* is presently being reconsidered by the three-judge district court in the District of Maryland. [Opinion rendered 390 F.Supp. 1084 (D.Md.1975).]