Sheila L. TANNER, Plaintiff-Appellee,

v.

Caspar WEINBERGER, Secretary, Health, Education and Welfare, Defendant-Appellant.

No. 75–1103.

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1975.

Decided Oct. 31, 1975.

William W. Milligan, U. S. Atty., Dayton, Ohio, Rex E. Lee, Asst. Atty. Gen., Leonard Schaitman, John M. Rogers, William Kanter, Robert S. Greenspan, Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Daniel A. Nagle, Karas & Nagle, Dayton, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and PECK and ENGEL, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This is an action brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act to review the decision of the Secretary of Health, Education and Welfare denying survivor's benefits to Stephvan Tanner, the illegitimate child of the plaintiff-appellee, Sheila Tanner, and the deceased wage earner, Clarence Turner. The district court, relying upon the Supreme Court's decision in *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), entered summary judgment in favor of the plaintiff. The Secretary appeals that decision.

The facts of this case are virtually undisputed. The deceased wage earner, Clarence Turner, was born on June 12, 1948. His first child, Wendlina, was born to Sheila Tanner on November 6, 1967. On June 5, 1968, a court order was entered in a bastardy proceeding finding that the wage earner was the father of Wendlina and ordering a judg-

ment to Sheila Tanner for her expenses of pregnancy and weekly support for the child. Thereafter the wage earner provided support for Wendlina. Stephvan Tanner was born on December 8, 1968. The administrative law judge found that Stephvan is the illegitimate son of the wage earner and Sheila Tanner. The wage earner commenced support of Stephvan at birth by giving money and regular supplies of milk, diapers, and items of clothing. However, two months prior to his death the wage earner had stopped making these voluntary contributions to the support of his son because of a dispute with Sheila Tanner over payment of that part of the judgment in Wendlina's case relating to pregnancy expenses.

Under the applicable provisions of the Social Security Act, the child of a deceased wage earner, who was dependent on the wage earner at the time of the latter's death is entitled to child's insurance benefits. 42 U.S.C. § 402(d)(1)(C)(ii). A legitimate child is "deemed" dependent and automatically qualifies for benefits. 42 U.S.C. §§ 416(e)(1) and 402(d)(3)(A). An illegitimate child also may qualify for benefits under one of several alternative provisions of the Act. An illegitimate child who could inherit personalty from the wage earner under the intestacy laws of the wage earner's state of domicile is eligible for benefits. 42 U.S.C. §§ 416(h)(2)(A), 416(e)(1) and 402(d)(3). A child whose illegitimacy results solely from formal, non-obvious defects in his parents' ceremonial marriage is entitled to receive benefits. 42 U.S.C. §§ 416(h)(2)(B), 416(e)(1) and 402(d)(3). And an illegitimate child may qualify for benefits if it is shown that the wage earner prior to his death either: (1) had acknowledged in writing paternity of the illegitimate child; (2) had been decreed by a court to be the father of the child;

or (3) had been ordered by a court to contribute to the support of the illegitimate child. 42 U.S.C. §§ 416(h)(3)(C)(i), 416(e)(1) and 402(d)(3). Illegitimate children unable to provide a written acknowledgement, a paternity decree, or a support order may still qualify for benefits under 42 U.S.C. § 416(h)(3)(C)(ii), the provision challenged herein, if the wage earner is shown by evidence satisfactory to the Secretary to be the father and the wage earner was living with or contributing to the support of the illegitimate child at the time of his death.

The parents of Stephvan never went through a marriage ceremony and the son was never legitimated under Ohio law. Turner never acknowledged paternity in writing, nor had he ever been decreed by a court to be the boy's father or ordered by a court to contribute to the boy's support. Thus the child is precluded from qualifying for survivor's benefits under the Social Security Act unless the "insured individual [father] was living with or contributing to the support of the applicant at the time such insured individual died." 42 U.S.C. §§ 402(d)(1)(C), 402(d)(3) and 416(h) (3)(C)(ii). It is conceded that Turner was not living with his son at the time of his death. The Secretary concluded that since the wage earner had ceased support payments two months before his death the child Stephvan was not eligible for benefits under the Act.

██ The constitutional challenge in this case is based upon a claimed violation of the Fifth Amendment and the equal protection of the laws guaranteed thereby.[1] In reviewing statutory classifications the Supreme Court has utilized two tests. The "traditional" equal protection test examines the classification for a rational basis or a rational nexus with a valid legislative purpose. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Linds-*

1. "While the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964); See, *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

*ley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). But when a classification is based on "suspect" criteria, *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Oyama v. United States,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (national origin), or impinges upon a fundamental right, *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to vote); *Griswald v. Conn.,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right of privacy); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel), the Court will strictly scrutinize the law, which must be narrowly drawn to effect a "compelling governmental interest." [2]

In dealing with classifications based on illegitimacy, the Supreme Court has consistently, with one exception, *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), chosen to strike down such discrimination as lacking a rational basis. *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Glona v. American Guarantee & Liability Insurance Co.,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Welfare Rights Organization v. Cahill,* 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973). In the Supreme Court's latest pronouncement on the subject, *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), 42 U.S.C. § 416(h)(3)(B) was held unconstitutional as contravening the equal protection component of the Fifth Amendment's

Due Process Clause. That section of the Act dealt with benefits for certain illegitimate children of a disabled wage earner and required proof of the wage earner's living with or contributing to the support of the child at the time of the onset of disability. The effect of this statutory provision was to conclusively preclude these illegitimate children born after the onset of disability from proving dependency or qualifying for benefits, while other afterborn illegitimate children (for example, those born of a void marriage) and afterborn legitimate children were presumed dependent and hence eligible for benefits.

The *Jimenez* Court expressly refused to reach the question of whether illegitimacy is a "suspect" classification sufficient to trigger strict judicial scrutiny and require a compelling governmental interest to support it. While noting that such classifications were similar in many respects to those characterized as "suspect," the Court found that 42 U.S.C. § 416(h)(3)(B) failed to meet even the less stringent rational basis test, and noted that "the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where . . . the classification is justified by no legitimate state interest, compelling or otherwise." *Jimenez v. Weinberger, supra* at 632, 94 S.Ct. at 2499, citing, *Weber v. Aetna Casualty & Surety Co., supra,* at 176, 92 S.Ct. 1400.

The Social Security Act provision at issue in the instant case is the parallel to that invalidated in *Jimenez,* the difference being the event insured against is death rather than disability. The Secretary maintains that the *Jimenez* case is clearly not automatically dispositive of the instant case. Therefore he would

---

**2.** In recent years the Court appears to have moved away from the rigidity of these two tests and to be evolving a newer standard of review requiring somewhat more than a rational basis and less than a compelling governmental interest to sustain certain classifications. This new standard focuses upon the means used to effect the end. *See,* Gunther, *The Supreme Court, 1971 Term—Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L.Rev. 1 (1972); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

have this court remand the case to the district court for further proceedings on the merits. Although we agree that *Jimenez* is not automatically controlling, in that it dealt with a different provision of the Act, there appears to be no dispute of fact which warrants a remand to the district court. The Secretary also contends that the reasoning of *Jimenez* does not dictate a like result in the Stephvan Tanner situation. With this contention we disagree.

Underlying the Supreme Court's decision in *Jimenez* is its characterization of the purpose of the statutory scheme at issue. While the government sought to justify the challenged classification as rational because it furthered the Act's purpose of replacing only actual support lost by dependent children as a result of the onset of disability, the Court expressly rejected this view, stating instead that "the primary purpose of the contested Social Security scheme is to provide support for dependents of a disabled wage earner." *Jimenez, supra* 417 U.S. at 634, 94 S.Ct. at 2500. Actual support or the lack of it prior to the event insured against (disability) was not considered determinative of the requisite economic dependency, and therefore, was not a rational basis for excluding the Jimenez children from eligibility.

The Court also found the statutory classification to be both "overinclusive" and "underinclusive" in that it provided benefits for some children who are not dependent (legitimate children and some illegitimate children "deemed" dependent), and denied benefits to some illegitimate children, such as the Jimenez children, who are in fact dependent. *Jimenez, supra* at 637, 94 S.Ct. 2496.

In the instant case, the government relies heavily upon *Norton v. Weinberger,* 364 F.Supp. 1117 (D.Md.1973), *vacated* 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150 (1974), *adhered to,* 390 F.Supp. 1084 (D.Md.1975), *appeal pending in Supreme Court,* No. 74–6212, in which a three-judge district court on similar facts upheld the statutory provision at issue in this case. *Norton* was remanded by the Supreme Court for reconsideration in light of *Jimenez* and was reaffirmed by the district court. We choose not to go the way of the *Norton* court. In the first *Norton* opinion (and subsequently adhered to in *Norton II*), the court placed a great deal of reliance on two basic premises rejected by the Supreme Court in *Jimenez.* First, the district court concluded that since the case involved social welfare legislation, the applicable standard of review was that delineated in *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"

However, in *Jimenez,* the Court found the *Dandridge* standard to be "distinguishable and not controlling." *Jimenez, supra* 417 U.S. at 634, 94 S.Ct. 2496. In effect, "a heavier and insupportable burden of justification was placed on the federal government than was placed on the state governments in *Dandridge,* and the assumptions which were declared adequate to support the statutory classifications in *Norton I* were rejected by the Supreme Court in *Jimenez.*" *Norton II, supra* at 1095, note 7 (*dissent*).

Secondly, the *Norton* court viewed the purpose of the Act to be one of replacing actual support lost by reason of the death of the insured. *Norton I, supra* at 1127. The Supreme Court expressly rejected this view. *Jimenez, supra* 417 U.S. at 634, 94 S.Ct. 2496. *Norton* thus looked to the statute to determine if it rationally related to a purpose which the Supreme Court has rejected as invalid.

Finally, in our view the district court in *Norton* misconstrued the broader im-

plications of the *Jimenez* opinion. Although the Court remanded *Jimenez* for a factual determination including consideration of factors tending to show actual support and dependency, we do not consider this to weigh significantly in favor of the government's and the *Norton* court's argument. Because the Secretary excluded the illegitimate Jimenez children by reason of their being born after the onset of the father's disability, there had been no consideration of their claims on the merits, including the question of paternity. Although the remand appears to require a showing of dependency, the opinion as a whole seems to make clear that actual support is not a necessary aspect of the concept of dependency. See *Jimenez, supra* at 634, 636–37, 94 S.Ct. 2496.

■ While the government argues that this provision rationally relates to the valid governmental purpose of providing support for only actual dependents and thereby avoiding spurious claims, the facts of the Stephvan Tanner claim illustrate the fallacy in that argument. Wendlina Tanner, the illegitimate daughter of the wage earner and sister of Stephvan is placed in the favored position of being deemed dependent because her mother found it necessary to obtain a court order for support of the child, while Stephvan, who was supported by his father for twelve of the first fourteen months of his life is ineligible for benefits on the technical basis of a short lapse in support payments and the fact that Stephvan's mother had no reason to require court ordered support. The primary purpose of this act is to aid dependents of deceased wage earners, and depriving similarly situated children of an opportunity for benefits solely on the basis of whether they were receiving support at the time of the insured's death does not serve this purpose.

The Act also provides a presumption of dependency for illegitimate children who may inherit from their father under state law. 42 U.S.C. § 416(h)(2)(A). Despite attempts by the district court in *Norton* to explain it away, the Supreme Court in *Jimenez* stated that "[u]nder the statute it is clear that illegitimate children born after the wage earner becomes disabled qualify for benefits if state law permits them to inherit from the wage earner, § 416(h)(2)(A)." *Jimenez, supra* at 634, 94 S.Ct. at 2501. The *Norton* court correctly perceives that "this is significant . . . because, if an individual were deemed dependent due to the unrelated circumstance that he is favorably treated under his state's intestacy laws, a significant question would be raised about the rational basis for the statutory scheme." *Norton II, supra* at 1090, note 7.

■ The provision at issue is clearly overinclusive in that it "deems" dependent, and therefore eligible for benefits, a great many children who are not. This overinclusiveness weighs against the argument that the Act rationally serves the purpose of preventing spurious claims from those not actually dependent. However, it would be inaccurate to characterize this statutory scheme simply as one which discriminates between subclasses of illegitimates. Rather the statute requires all claimants to establish the parenthood of the insured. Additional burdens are imposed strictly in instances of illegitimacy. *Lucas v. Secretary of H.E.W.,* 390 F.Supp. 1310, 1315 (D.C.R.I. 1975).

The Supreme Court dealt with a closely analogous statutory scheme in *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). That provision automatically allowed benefits for the wives of servicemen, but required women in the service to prove actual dependency of their husbands in order to qualify for such benefits. This additional burden resulted in one subclass of married servicewomen receiving benefits while a second subclass (those whose husbands could not prove factual dependency) could not. The Supreme Court held the statute discriminated on the basis of sex and not merely between two subclasses of women. Likewise, we

conclude that the statute in the instant case discriminates between legitimate and illegitimate children solely on the basis of the circumstances of their births.

 In essence the discriminatory impact of this statute is twofold: first, procedurally, an illegitimate child is required to demonstrate dependency, while no such burden is imposed upon legitimate children; and second, substantively, a legitimate child who was not dependent on the deceased insured receives survivor's benefits, while a similarly situated illegitimate child, who cannot meet any of the requirements by which he is "deemed" dependent is denied benefits. *See, Frontiero v. Richardson, supra* at 680, 93 S.Ct. 1764. Society's view, reflected in this statutory scheme, that legitimate and legitimated children are more readily entitled to support by or through a parent than are illegitimate children is not a valid governmental interest sufficient to support the challenged classification. *Lucas v. Secretary of H.E.W., supra* at 1320. "Although Congress has great latitude to make classifications in the area of economic and welfare legislation, a provision must have some rational basis or be pertinent to some proper objective of the Congress in order to withstand challenge." *Davis v. Richardson,* D.C.Conn., 342 F.Supp. 588, 591, *aff'd,* 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972).

We conclude that the major thrust of *Jimenez v. Weinberger* and preceding Supreme Court cases is that once paternity is proved by either the formal procedures of the Act or otherwise "to the satisfaction of the Secretary" all children otherwise qualifying under the Act must be accorded the same presumption of dependency.

The judgment of the district court is affirmed.